UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE RESEARCH FOUNDATION OF
STATE UNIVERSITY OF NEW YORK,

                     Plaintiff,

  -against-                                                  1:09-CV-00071 (LEK/ DRH)

BRUKER CORPORATION f/k/a BRUKER
BIOSCIENCES CORPORATION, BRUKER
BIOSPIN GMBH, BRUKER BIOSPIN
CORPORATION, and VARIAN, INC.,

                     Defendants.

**DECISION AND ORDER**

On January 21, 2009, the Research Foundation of State University of New York ("Plaintiff" or "Research Foundation") commenced this action against Defendants seeking a preliminary injunction, permanent injunction, and damages resulting from Defendants' alleged infringement of Plaintiff's patent, United States Patent No. 6,831,459 (the "'459 patent"). Compl. (Dkt. No. 1). Defendants are Bruker Corporation (f/k/a Bruker Biosciences Corporation), a Delaware corporation with its principle place of business in Massachusetts; Bruker BioSpin Corporation, a Massachusetts corporation with its principle place of business in Massachusetts; Bruker BioSpin GmbH ("Bruker Germany"), a German corporation with its principle place of business in Germany; and Varian, Inc., a Delaware Corporation with its principle place of business in California. Compl. (Dkt. No. 1). Presently before the Court is Defendant Bruker Germany's Motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) on the grounds that (1) the Court lacks personal jurisdiction and (2) venue is improper. Mot. to dismiss (Dkt. No. 39). The U.S.-based Bruker

Defendants and Varian have consented to the Court's jurisdiction.  Defs.' Answer ¶ 7 (Dkt. No. 17); Def.'s Answer ¶ 6 (Dkt. No. 14).

For the reasons discussed below, this Court does not have personal jurisdiction over Defendant Bruker Germany.  Therefore, Defendant's Motion to dismiss is granted.

**I. BACKGROUND**

Research Foundation is a New York nonprofit educational corporation headquartered in Albany County.  Compl. ¶ 1 (Dk. No. 1).  Research Foundation is the owner of all rights, title, and interest in and under the '459 patent entitled "Method of Using G-matrix Fourier Transformation Nuclear Magnetic Resonance (GFT NMR) Spectroscopy for Rapid Chemical Shift Assignment and Secondary Structure Determination of Proteins."  Compl. ¶ 11 (Dkt. No. 1).  A method patent, the '459 patent discloses a technique for using multi-dimensional Fourier transformation methods to perform NMR experiments.  Compl. ¶ 11 (Dkt. No. 1); Pl.'s Mem. in Opp'n at 5 (Dkt. No. 43).  Defendant Bruker Germany is a foreign corporation having offices and employees only in Germany.  Def.'s Mem. in Supp. at 2 (Dkt. No. 39).  Collectively, the Bruker Defendants manufacture NMR spectrometers and a software package called *TopSpin*, which is bundled with new spectrometers or sold separately to customers seeking software upgrades for existing NMR systems.  Pl.'s Mem. in Opp'n at 5 (Dkt. No. 43).  Plaintiff alleges that Defendants infringe upon the '459 patent by "making, using, selling, offering for sale, and/or importing into the United States . . . spectrometers and related products that practice the methods of the '459 patent."  Compl. ¶ 13–14.  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 due to diversity of citizenship and a sufficient amount-in-controversy; the action also arises under the federal patent laws such that subject matter jurisdiction is also proper under 28 U.S.C. § 1331.

Defendant Bruker Germany moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that the Court lacks personal jurisdiction.  Bruker Germany claims that it has made no sales in New York, is not licensed to do business in New York, has no offices, employees, business records, agents, property, or other contacts with or within New York, and does not target customers, advertise or market in New York, nor derive revenue from business activities in New York.  See Def. Mem. in Supp. at 1.  Plaintiff asserts that personal jurisdiction is proper because "[e]ach Defendant has conducted and does conduct business within the State of New York [and] directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, and sells its products in the United States, the State of New York, and the Northern District of New York."  Compl. ¶ 7 (Dkt. No. 1).  Further, "[e]ach Defendant has purposefully and voluntarily placed one or more of its infringing products . . . into the stream of commerce with the expectation that they will be purchased by consumers in the Northern District of New York."  Compl. ¶ 7 (Dkt. No. 1).  Plaintiff alleges that the "products at issue are offered for sale on Bruker websites at both www.bruker.com and www.bruker-biospin.com in the State of New York and the Northern District of New York."  Compl. ¶ 8 (Dkt. No. 1).  Finally, Plaintiff alleges that "[e]ach Defendant has committed the tort of patent infringement within the State of New York and, more particularly, within the Northern District of New York."  Compl. ¶ 7 (Dkt. No. 1).

### III. STANDARD OF REVIEW

#### A. Personal Jurisdiction

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis.  First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits. . . . Second, if jurisdiction

3

is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." Harris v. Ware, No. 04 CV 1120, 2005 WL 503935, at *1–2 (E.D.N.Y. Mar. 4, 2005) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)). See also Rusyniak v. Gensini, 629 F. Supp. 2d 203, 215 (N.D.N.Y. 2009); Daou v. Early Advantage, LLC, 410 F. Supp. 2d 82, 88 (N.D.N.Y. 2006). On such a motion, "'plaintiff bears the burden of showing that the court has jurisdiction over the defendant.'" Stein Fibers, Ltd. v. Bondex Telas Sin Tejar, No. 1:08-CV-210, 2009 WL 385412, at *2 (N.D.N.Y. Feb. 10, 2009) (Kahn, J.) (quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)). However, "[p]rior to discovery, a plaintiff need only make a prima facie showing that jurisdiction exists and can make this showing through his own affidavits, pleadings and supporting materials." Stein Fibers, 2009 WL 385412, at *2 (citing Hollenbeck v. Comeq, Inc., No. 5:03-CV-0825, 2007 WL 2484299, at *2 (N.D.N.Y. Aug. 28, 2007) (Kahn, J.)). "All pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in the plaintiff's favor." Stein Fibers, 2009 WL 385412, at *2 (citing CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

### B. Venue - Rule 12(b)(3)

When analyzing a motion pursuant to Rule 12(b)(3), "a district court may dismiss a case if an alternative forum exists where the case may be heard, and if trial in the present forum 'would be oppressive and vexatious to a defendant.'" Daou, 410 F. Supp. 2d at 89 (quoting Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS, 315 F. Supp. 2d 286, 290 (W.D.N.Y. 2004)). An alternative forum is proper if: "(1) the defendants are subject to service of process there and (2) the

forum permits litigation of the subject matter of the dispute." Minibooster Hydraulics, 315 F. Supp. 2d at 290.  A "strong presumption exists in favor of the forum in which Plaintiff has chosen to bring suit," therefore the moving party "bears the burden of 'establish[ing] that the alternative forum is 'clearly more appropriate.'" Daou, 410 F. Supp. 2d at 89 (quoting Minibooster Hydraulics, 315 F. Supp. 2d at 290)).  "Dismissal will generally be inappropriate unless 'the balance of convenience tilts strongly in favor of trial in the foreign forum.'" Id.  Finally, the court "'must accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.'" Daou, 410 F. Supp. 2d at 89 (quoting Micromuse, Inc. v. Aprisma Mgmt. Tech., Inc., No. 05 Civ. 0894SAS, 2005 WL 1241924, at *2 (S.D.N.Y. May 24, 2005)).

## IV. DISCUSSION

### A. Personal Jurisdiction

Unless otherwise provided by federal law, in a diversity or federal question case, like the instant action, "'[t]he amenability of a foreign corporation to suit in a federal court . . . is determined in accordance with the law of the state where the court sits.'" Stein Fibers, 2009 WL 385412, at *2 (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990)).  The relevant law in this case is therefore that of New York State.

#### 1. Jurisdiction under New York State Law

##### *a. C.P.L.R. 301*

The New York long-arm statute "does not extend as far as federal due process permits." Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., 479 F. Supp. 2d 388, 396 (S.D.N.Y. 2007) (citing Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 829–30, 522 N.E.2d

5

1027, 1029, 527 N.Y.S.2d 729, 731 (1988)).  "Personal jurisdiction in New York State may be established under either § 301 or § 302 of New York's *Civil Practice Law and Rules*."  Daou, 410 F. Supp. 2d at 90.

> With respect to in personam jurisdiction, New York recognizes five potential bases: presence, consent, domicile, doing business and 'long-arm jurisdiction.'  The first four of these bases were imbedded in the state's jurisdictional law prior to the adoption of CPLR 301 and are preserved by that section. . . . Long-arm jurisdiction is the topic of CPLR 302.

N.Y. C.P.L.R. 301 cmt. C301:1 (McKinney 2005).  Under section 301, "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. 301 (McKinney 2005).  Several factors are examined "to determine whether a defendant can be reached under section 301, including whether a defendant has an office, solicits business, has bank accounts and other property, or employs workers in the state."  Cortland Line Co. v. Vincent, No. 98-CV-259, 1999 WL 305369, at *2 (N.D.N.Y. May 7, 1999) (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)).  "Arguably the most important factor needed for a finding of jurisdiction under § 301 is the in-state presence of employees engaged in business activity."  Cortland Line, 1999 WL 305369, at *2 (citing Pellegrino v. Stratton Corp., 679 F. Supp. 1164, 1171 (N.D.N.Y. 1986)).

In this case, personal jurisdiction cannot be founded upon any of the four bases under section 301, namely presence, consent, domicile, or "doing business."  As Plaintiff recognizes, Bruker Germany "is a nonresident of New York that . . . does not maintain a regular place of business or a designated agent for service of process in New York."  Compl. ¶ 3 (Dkt. No. 1). Therefore personal jurisdiction cannot be based upon Bruker Germany's presence or domicile in New York State.  Furthermore, Bruker Germany has not consented to personal jurisdiction,

although the U.S.-based Bruker entities have accepted the Court's jurisdiction.  Defs.' Answer ¶ 7 (Dkt. No. 17).  This leaves the final basis, "doing business."  Plaintiff asserts that Bruker Germany "is subject to the jurisdiction of a court of general jurisdiction in the State of New York because its continuous, permanent, and substantial activities rise to the 'doing business' standard under C.P.L.R. § 301."  Pl.'s Mem. in Opp'n at 3 (Dkt. No. 43).

Personal jurisdiction over Bruker Germany cannot be founded upon the "doing business" standard of section 301, as Bruker Germany does not "ha[ve] an office, solicit[] business, ha[ve] bank accounts and other property, or employ[] workers in the state."  Cortland Line, 1999 WL 305369, at *2.  Indeed, "Bruker Germany is a German company, with offices and employees only in Germany."  Def.'s Mem. in Supp. at 2 (Dkt. No. 39).  Furthermore, Bruker Germany "has never maintained any office or place of business in the State of New York[,]" "has never had any employees or agents located within the State of New York[,]" "has never owned or leased any real estate in the State of New York[,]" and "has never maintained a bank account in the State of New York."  Def.'s Mem. in Supp. at 4 (Dkt. No. 39).  Plaintiff may also demonstrate that Bruker Germany actively solicits business in New York State in order to establish personal jurisdiction under the "doing business" standard, but it has failed to do so.

Plaintiff argues that Bruker Germany is soliciting business in New York by maintaining Bruker's corporate website, including the "Web Shop" where the alleged infringing software, *TopSpin*, can be purchased.  Pl.'s Mem. in Opp'n at 2 (Dkt. No. 43).  Indeed, Plaintiff avers that Bruker Germany "solely operates and maintains Bruker's corporate website, including its 'Web shop.'  Both Bruker's corporate website and its 'Web shop' are directed to users in the United States, including New York."  Pl.'s Mem. in Opp'n at 2 (Dkt. No. 43).  However, while Bruker Germany is the web host for the Bruker Corporate website, "different aspects of Bruker's website

7

are operated and maintained by personnel from various divisions of Bruker Corp. . . . around the world[,]" and the "Web Shop" "is actually operated by Bruker BioSpin AG, an entity based in Fällanden, Switzerland." Def.'s Reply Mem. in Supp. at 2–3 (Dkt. No. 45). Merely acting as the web host for the Bruker corporate website does not amount to a solicitation of business within New York State. Plaintiff also contends that Bruker Germany "authors and maintains *TopSpin*'s user manual and installation guides, which are provided to purchasers of Bruker NMR systems at the time of purchase, and available for download directly from Bruker's website to users throughout the United States, including New York." Pl.'s Mem. in Opp'n at 2 (Dkt. No. 43). The mere availability of this ancillary documentation on a website hosted by Bruker Germany, however, does not amount to Bruker Germany's solicitation of business in New York State. The documentation is made available to those who have already purchased *TopSpin*, and is not offered as a mechanism to solicit further sales. Indeed, Bruker Germany "does not target, advertise, or market to customers in the State of New York." Def.'s Mem. in Supp. at 4 (Dkt. No. 39). For these reasons, personal jurisdiction over Bruker Germany cannot be established under section 301. The Court, therefore, moves to an examination under section 302.

### b. C.P.L.R. 302(a)

Under section 302(a), a court may exercise personal jurisdiction over a foreign defendant if the defendant: "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state . . . ; or (3) commits a tortious act without the state causing injury to person or property within the state" and the defendant "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial

8

revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. 302(a)(1)–(4) (McKinney 2005). Plaintiff does not allege that Defendant committed "a tortious act within the state;" therefore, C.P.L.R. section 302(a)(2) will not be examined. N.Y. C.P.L.R. 302(a)(2). Likewise, Plaintiff does not allege that Defendant "owns, uses or possesses any real property situated within" New York, and so there is no need for analysis under C.P.L.R. section 302(a)(4). N.Y. C.P.L.R. 302(a)(4).

### *c. Transaction of Business in New York - C.P.L.R. 302(a)(1)*

Under section 302(a)(1), a court has personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1). "A defendant transacts business in New York when he 'purposefully avails' himself of the privilege of conducting business there, thus invoking the benefits and protections of New York law." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153–54 (2d Cir. 1999) (citations omitted). "To determine whether a defendant has transacted business in New York within the meaning of CPLR § 302(a)(1), a court must look to the 'totality of the circumstances' surrounding the defendant's alleged contacts with the state." Stein Fibers, 2009 WL 385412, at *3 (citing United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp. 2d 273, 277 (N.D.N.Y. 2002)). Additionally, section 302(a)(1) "has been interpreted to require a certain quality, rather than a specific quantity, of a defendant's contact with the forum." Bank of California v. Smith Barney, Inc., No. 89-CV-551, 1997 WL 736529, at *3 (N.D.N.Y. 1997) (citing, *inter alia*, Manhattan Life Ins. Co. v. A.J. Stratton Syndicate, 731 F. Supp. 587, 592 (S.D.N.Y. 1990)). "Mere solicitation, advertising, or telephone calls to New York do not satisfy the 'transaction of business' test." Selman v. Harvard Med. Sch., 494 F. Supp. 603, 612 (S.D.N.Y.

9

1980) (citing Glassman v. Hyder, 23 N.Y.2d 354, 362, 244 N.E.2d 259, 263, 296 N.Y.S.2d 783, 789 (1968)).  The inquiry is a "'simple pragmatic one' . . . : is the aggregate of the corporation's activities in the State such that it may be said to be 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity' . . . and is the quality and nature of the corporation's contacts with the State sufficient to make it reasonable and just according to 'traditional notions of fair play and substantial justice.'"  Daou, 410 F. Supp. 2d at 91 (quoting Laufer v. Ostrow, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982)).

Finally, "[w]ebsites that are of a commercial nature and permit consumers to place orders and e-mail questions, can confer personal jurisdiction pursuant to section 302(a)(1)." ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 86 (E.D.N.Y. 2006) (citing Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000); Hsin Ten Enter. USA v. Clark Enters., 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000); Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc., No. 00 Civ.1971, 2000 WL 1290585, at *12 (S.D.N.Y. 2000)).  However, "in these commercial website cases, the Court's inquiry regarding the existence of personal jurisdiction went beyond the website at issue," considering other indicia of contacts.  ISI Brands, 458 F. Supp. 2d at 86–87. Examples of such additional factors include "that the defendant had directly solicited New York clients through the mail and hired New York companies to record mortgages," Citigroup, that "'defendants have affiliates who reside in New York, have representatives who have appeared in trade shows in New York, and have sold several Exercise Machines to New York residents,'" Hsin, and that "(1) the defendant's agents in New York had procured contracts with New York merchants, (2) the defendant had entered into such contracts with 176 New York merchants, and (3) the defendant actively recruited students in New York," Student Advantage.  ISI Brands, 458 F. Supp.

2d at 86–87 (quoting Hsin, 138 F. Supp. 2d at 456; citing Citigroup, 97 F. Supp. 2d at 565; Student Advantage, 2000 WL 1290585, at *12). "Simply maintaining a web site in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction in New York." Pearson Educ., Inc. v. Shi, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) (citing Bensusan Rest. Corp. v. King, 126 F.3d 25 (2d Cir. 1997)).

Bruker Germany does not transact business in New York State with "a fair measure of permanence and continuity" as to amount to more than occasional or casual contact with the forum. Plaintiff alleges that personal jurisdiction is proper under section 302(a)(1) "because [Bruker Germany] has (1) transacted business from which the instant cause of action arises." Pl.'s Mem. in Opp'n at 3 (Dkt. No. 43). Plaintiff offers at least five indicia of Bruker Germany's business transactions within the forum, including its manufacture of spectrometers, its training programs, its software development, its sales of the software, and its maintenance of the Bruker Corporate website. Bruker Germany "houses one of Bruker's main manufacturing facilities" where it "presumably manufactures a significant portion of [the] infringing NMR spectrometers." Pl.'s Mem. in Opp'n at 3, 6 (Dkt. No. 43). Assuming the truth of Plaintiff's factual assertions regarding the manufacture of the infringing product, such manufacture does not amount to a transaction of business within New York State, and therefore does not further a finding of personal jurisdiction under section 302(a)(1). Plaintiff also alleges that Bruker Germany "provides NMR and software training for users throughout the United States, including New York." Pl.'s Mem. in Opp'n at 7 (Dkt. No. 43). However, Plaintiff's own declaration reveals that Bruker Germany "offers several TopSpin training courses in English *in Germany* throughout the year. . . . According to the NMR Training Course 2009 webpage, TopSpin training courses are *not* offered in the United States."

Wang Decl. ¶ 3 (Dkt. No. 43-3) (emphasis added).  Like its manufacture of spectrometers, Bruker Germany's offer of training courses in Germany through its website, regardless of the language of instruction, has no bearing on a finding of business transactions in New York State.

Plaintiff also maintains that Bruker Germany's involvement with the *TopSpin* software development contributes to a finding of business transactions within New York State.  Plaintiff asserts that Bruker Germany "develops, maintains, and supports the accused TopSpin software, and communicates and offers to communicate directly with the State University of New York and other owners of Bruker [NMR] systems in New York to provide such support."  Pl.'s Mem. in Opp'n at 2 (Dkt. No. 43).  Plaintiff also alleges that Bruker Germany "plays a major, and sometimes sole, role in . . . distribution of both the software and NMR systems throughout the United States, including New York."  Pl.'s Mem. in Opp'n at 4 (Dkt. No. 43).  However, it is unclear whether or not Bruker Germany is responsible for the sales of the *TopSpin* software in New York State.  If taken as true, Plaintiff's assertions establish that the alleged infringing software and spectrometers are manufactured and developed by Bruker Germany, but Bruker Germany's contact with New York State is not established through these activities.  Plaintiff's allegations regarding the software are attributed to the Bruker Defendants collectively, rather than to Bruker Germany specifically: the "Bruker Defendants include the patented method in their operating software, including a software package called TopSpin, which is bundled with new NMR spectrometers.  The Bruker Defendants also sell this infringing software separately to customers, including those seeking software upgrades for their existing NMR systems."  Pl.'s Mem. in Opp'n at 5 (Dkt. No. 43).  From these facts alone, Bruker Germany cannot be said to be transacting business within New York State with a "fair measure of permanence and continuity" as to confer personal jurisdiction under section 302(a)(1).

While the development of the *TopSpin* software alone does not amount to a transaction of

12

business for purposes of section 302(a)(1), sales of the software by Bruker Germany into New York State would qualify as such a transaction. Once again treating the Bruker Defendants collectively, Plaintiff asserts that "it is undisputable that the Bruker Defendants have 'transacted business' in New York because they have sold numerous NMR spectrometers to customers in New York, and these spectrometer sales form the basis of the Research Foundation's patent infringement claims." Pl.'s Mem. in Opp'n at 13 (Dkt. No. 43). Plaintiff has again failed to isolate Bruker Germany's specific involvement with these sales. Meanwhile, Bruker Germany claims that it "has made no sales whatsoever in New York," "derives no revenue from business activities in New York," and "has never received any payments from a person or entity within the State of New York for any of the accused products." Def.'s Mem. in Supp. at 1 (Dkt. No. 39). In response, Plaintiff claims that "it is incontrovertible that Bruker Germany generates and directly mails the customer an electronic license 'password' and a link to download the infringing software. . . . Without this password, a customer cannot use the infringing TopSpin software, which was developed by Bruker Germany to operate, control, and manage Bruker's NMR spectrometers." Pl.'s Sur-Reply Mem. in Opp'n at 1 (Dkt. No. 51). The fact that a password is supplied by Bruker Germany does not, however, establish a sale executed by Bruker Germany and thereby indicate a transaction of business for purposes of section 302(a)(1). While Plaintiff has supplied evidence of a purchase made from the Bruker Defendants to support its jurisdictional basis, this sale "was not even handled by Bruker Germany." Pl.'s Mem. in Opp'n at 6–7 (Dkt. No. 43).

Plaintiff also attempts to illustrate Bruker Germany's transactions of business within New York through its maintenance of the Bruker corporate website, as well as the sales made through the website. Indeed, the "'contacts' with New York identified by Plaintiff are the existence of Bruker

Germany's website accessible from New York via the internet and the presence of Bruker Germany's product in New York." Def.'s Mem. in Supp. at 2 (Dkt. No. 6–7). Plaintiff claims that the "accused infringing software . . . is marketed directly to customers in the United States, including New York, through Bruker's corporate website." Pl.'s Mem. in Opp'n at 2 (Dkt. No. 43). However, the existence of the website alone does not establish business transactions for the purposes of section 302(a)(1). Plaintiff further asserts that the *TopSpin* software can be purchased within New York from the "Web Shop" portion of the Bruker Corporate website. Pl.'s Mem. in Opp'n at 2 (Dkt. No. 43). As stated above, however, Defendant has explained that it is not responsible for this portion of the website; rather it is operated by Bruker BioSpin AG, an entity based in Fällanden, Switzerland. Def.'s Reply Mem. in Supp. at 2–3 (Dkt. No. 45). Finally, Plaintiff alleges that additional documentation relating to the accused infringing software and spectrometers is made available through the Bruker Corporate website hosted by Bruker Germany: "Additional documentation relating to Bruker NMR equipment and the software produced by Bruker GmbH is available for download directly from the Bruker corporate website to users in the United States, including New York." Pl.'s Mem. in Opp'n at 3 (Dkt. No. 43). The mere existence of ancillary documentation available to Internet users through a publicly accessible website, however, does not amount to a sale within New York State, let alone a transaction of business within the State.

Even viewed in the aggregate, and taking all of Plaintiff's factual assertions as true, the "totality of the circumstances" do not justify the exercise of personal jurisdiction over Bruker Germany under section 302(a)(1), as its activities within the State are not performed with "a fair measure of permanence and continuity."

### d. Tortious Act Without the State - C.P.L.R. 302(a)(3)

Under section 302(a)(3), Plaintiff "must show both that an injury occurred 'within the state,' and that the elements of either clause (i) or (ii) have been satisfied." Ingraham v. Carroll, 90 N.Y.2d 592, 596, 687 N.E.2d 1293, 1294, 665 N.Y.S.2d 10, 11 (1997) (cited by Wing Shing, 479 F. Supp. 2d at 398–99). "Subdivision (a)(3)(i) requires the party seeking to obtain jurisdiction to demonstrate that the tortfeasor 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state.'" Ingraham, 90 N.Y.2d at 597, 687 N.E.2d at 1295, 665 N.Y.S.2d at 12 (quoting N.Y. C.P.L.R. 302(a)(3)(i)). Subdivision (a)(3)(ii), on the other hand, "requires the satisfaction of two prongs. To establish jurisdiction, a plaintiff must demonstrate that the nonresident tortfeasor: (1) 'expects or should reasonably expect the act to have consequences in the state'; *and* (2) 'derives substantial revenue from interstate or international commerce.'" Ingraham, 90 N.Y.2d at 598, 687 N.E.2d at 1295, 665 N.Y.S.2d at 12 (quoting N.Y. C.P.L.R. 302(a)(3)(ii)) (emphasis in original). "The first prong is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere. The nonresident tortfeasor must expect, or have reason to expect, that his or her tortious activity in another State will have direct consequences in New York." Ingraham, 90 N.Y.2d at 598, 687 N.E.2d at 1295, 665 N.Y.S.2d at 12. The second prong "narrows the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but 'whose business operations are of a local character.'" Id. at 599, 687 N.E.2d at 1296, 665 N.Y.S.2d at 13 (quoting 12th Ann. Report of N.Y. Jud. Conf., at 342–43).

Plaintiff argues that Bruker Germany is subject to personal jurisdiction under section

302(a)(3) "because it has . . . committed the tortious act of patent infringement that has caused injury to the Research Foundation within the State of New York, and it (i) regularly does and solicits business in New York, and (ii) expects or reasonably should expect the act to have consequences within the state." Pl.'s Mem. in Opp'n at 3 (Dkt. No. 43). Even assuming that the tortious act of patent infringement occurred out of state and caused injury within New York State, Plaintiff has failed to demonstrate that Defendant "regularly does or solicits business" within New York State or "engages in any other *persistent* course of conduct" as discussed above. N.Y. C.P.L.R. 302(a)(3)(i) (emphasis added). Thus, the first prong of section 302(a) is not fulfilled. Again, Plaintiff contends that the Bruker Defendants, collectively, "have sold infringing spectrometers and software throughout the United States, including New York [and i]n order to activate the infringing software, users must install a license that is provided to them directly by Bruker [Germany]." Pl.'s Mem. in Opp'n at 15 (Dkt. No. 43). Viewing Bruker Germany's provision of the enabling password in the light most favorable to Plaintiff, it is still insufficient to establish a persistent course of conduct by Bruker Germany within New York State. Bruker Germany also does not derive "substantial revenue" from the State as required by the first prong. Indeed, "Bruker Germany derives no revenues from business activities within the State of New York." Def.'s Mem. in Supp. at 1 (Dkt. No. 39). While Plaintiff's assertions clearly establish personal jurisdiction over the U.S.-based Bruker Defendants, both of which have accepted the Court's jurisdiction, these assertions fail to do so for Bruker Germany.

### 2. Constitutional Analysis

Because the Court has found that personal jurisdiction over Defendant Bruker Germany is not proper under New York State law, it need not reach the constitutional analysis of whether an

assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." Daou, 410 F. Supp. 2d at 91 (citations omitted).

### B. Venue

The Court need not reach the issue of improper venue, having found that it may not exercise personal jurisdiction over Defendant Bruker Germany. Additionally, neither party has briefed the issue, and the moving party failed to offer an alternative venue.

## V. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (Dkt. No. 39) is **GRANTED**; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED**.

DATED:     March 15, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge